CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 14 2014

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VIVIAN BRINEGAR GREEN, | ) |
| | ) Civil Action No. 7:14CV00039 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) By: Hon. Glen E. Conrad |
| Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to §205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Vivian Brinegar Green, was born on December 18, 1957, and eventually completed her high school education. Mrs. Green also completed one year of college. (TR 44). Plaintiff has been employed as a respiratory therapist, deli worker, assembly line worker, and waitress. Apparently, Mrs. Green last worked on a regular and sustained basis in 2009. (TR 233-34).

It seems that plaintiff first filed applications for disability insurance benefits and supplemental security income benefits on May 24, 2007. These claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated November 4, 2009, the Law Judge also determined that Mrs. Green was not disabled. The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Mrs. Green appealed the adverse decision to the United States District Court for the Eastern District of Virginia. However, the district court ultimately affirmed the Commissioner's final decision.

On October 21, 2010, plaintiff filed new applications for disability insurance benefits and supplemental security income benefits. She alleged that she became disabled for all forms of substantial gainful employment on October 1, 2009 due to spinal stenosis, degenerative disc disease, bi-polar disorder, depression, and post-traumatic stress disorder. She now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Mrs. Green met the insured status requirements of the Act through the first quarter of 2010, but not thereafter. See generally 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if she has established that she was disabled for all forms of substantial gainful employment on or before March 31, 2010. See generally, 42 U.S.C. § 423(a).

As to her claim for supplemental security income benefits, it was determined upon initial consideration that Mrs. Green was disabled for all forms of substantial gainful employment as of the

2

date of her application for benefits.[1] (TR 130-43). Plaintiff began to receive supplemental security income benefits. However, her claim for disability insurance benefits was denied upon initial consideration and reconsideration. Mrs. Green then sought and received a de novo hearing and review before a second Administrative Law Judge.

Following conduct of an administrative hearing, the second Law Judge rendered a decision on November 16, 2012. As to the period between plaintiff's alleged disability onset date of October 1, 2009 through November 4, 2009, the date of the Commissioner's final decision on plaintiff's earlier applications for benefits, the Law Judge ruled that Mrs. Green's claim of entitlement was barred under the doctrine of administrative res judicata. See 20 C.F.R. §§ 404.957 and 404.981. See also McGowen v. Harris, 666 F.2d 60 (4th Cir. 1981). Thus, the Law Judge determined that, for purposes of her claim for disability insurance benefits, it was necessary to determine whether plaintiff was disabled within the meaning of the Act at any time between November 5, 2009, the day following the date of the prior administrative decision, through March 31, 2010, the date of termination of plaintiff's insured status.

The Law Judge found that, during the period at issue, Mrs. Green suffered from several severe impairments, including degenerative disc disease, osteoarthritis, an affective disorder, and an anxiety disorder. Because of these impairments, the Law Judge held that Mrs. Green possessed a residual functional capacity for only a limited level of light work activity during the critical period. The Law Judge assessed plaintiff's residual functional capacity as follows:

---

[1] Under 20 C.F.R. § 416.335, a successful claimant for supplemental security income can receive benefits no earlier than the month following the month of application.

3

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she must be able to alternate between sitting and standing once every two hours. In addition, she was limited to positions that require no more than occasional bending, stooping, climbing, kneeling, crouching and crawling. Further, she could not work at jobs requiring interaction with the general public or more than occasional interaction with supervisors and coworkers.

(TR 25). Given such a residual functional capacity, and after considering Mrs. Green's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge held that plaintiff retained sufficient functional capacity to perform her past relevant work as an assembler at all relevant times through the date last insured. (TR 29). Relying on the testimony of the vocational expert, the Law Judge also found that, at all relevant times, plaintiff retained sufficient functional capacity to perform other light work roles existing in significant number in the national economy. (TR 31). Accordingly, the Law Judge ultimately concluded that Mrs. Green was not disabled at any time prior to the termination of insured status, and that she is not entitled to disability insurance benefits. See generally, 20 C.F.R. §§ 404.1520(f) and (g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Green has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical

4

Case 7:14-cv-00039-GEC   Document 17   Filed 10/14/14   Page 4 of 11   Pageid#: 1014

manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. Indeed, the court believes that the Commissioner's treatment of Mrs. Green's disability insurance claim is untenable and borders on the bizarre. Plaintiff suffers from various physical problems, including osteoarthritis, spinal stenosis, restless leg syndrome, and fibromyalgia. Even assuming that plaintiff's physical problems are not so severe as to prevent lighter forms of work activity, the court also notes that Mrs. Green experiences serious psychiatric difficulties. In May of 2010, she was hospitalized for treatment of bipolar disorder with psychotic features and post-traumatic stress disorder. As noted by the Administrative Law Judge, Mrs. Green's second application for supplemental security income benefits was approved on the basis of the finding that her affective disorder was so severe as to meet the criteria of a listed impairment as of her application for benefits on October 21, 2010.[2] (TR 29). Indeed, all of the mental health evidence developed in connection with plaintiff's second set of applications indicates that Mrs. Green is totally disabled due to her psychiatric problems.

The Law Judge ruled that plaintiff's psychiatric condition did not prevent performance of past relevant work at any time prior to the termination of insured status. While the Law Judge recognized

---

[2] Under the third step of the sequential disability analysis, if a claimant suffers from an impairment or combination of impairments which meets or equals an impairment listed in the administrative regulations, the claimant is deemed to be disabled without consideration of factors such as age, education, and prior work experience. See 20 C.F.R. § 916.920(d).

5

that all the later mental health reports suggest that plaintiff is totally disabled, the Law Judge found that the reports "offer little probative value for the relevant time period." (TR 28). The Law Judge determined to give these later reports "little weight." (TR 28). In reaching this conclusion, the Law Judge ostensibly relied on reports from nonexamining state agency physicians and psychologists. (TR 28). The Law Judge interpreted these reports to suggest that there was insufficient evidence to fully evaluate the severity of plaintiff's mental health condition prior to her psychiatric hospitalization on May 5, 2010. In the report cited by the Law Judge, the state agency psychologist, Dr. Stephen P. Saxby, stated as follows:

> Recent evidence is significant for bipolar disorder with psychosis and posttraumatic stress disorder. The claimant has had multiple psychiatric hospitalizations in 2010. Evidence from these hospitalizations indicate hallucinations and paranoid ideation as well as poor sleep and appetite, self-injurous [sic] behavior, psychomotor retardation, and suicidal ideation. The claimant's report of her functional abilities is significant for paranoid thinking such as reporting inability to trust others as well as poor ability to concentrate.
>
> A consultative examination was purchased in order to obtain additional information regarding the claimant's conditions. On examination, she was found to have significant depressive symptoms including poor sleep, poor appetite, memory impairment, suicidal ideation, low energy (motivation) and paranoid thoughts. A medical source statement from the provider of the consultative examination suggests that the claimant is not capable of performing work consistently due to these symptoms.
>
> It is also notable that an interview was conducted with the claimant's caseworker at the Department of Social Services where the claimant receives food stamps regarding a meeting in June 2010. The claimant was described as nervous, anxious, tense, restless, and with poor concentration. She was found to behave in a "paranoid manner" and had a short attention span.
>
> Evidence indicates that the claimant would not be capable of completing a normal workday or workweek without significant interruptions from psychologically based symptoms. Due to paranoid thinking, the claimant would also have significant

Case 7:14-cv-00039-GEC Document 17 Filed 10/14/14 Page 6 of 11 Pageid#: 1016

> limitations regarding social functioning. Beginning 5/5/2010, the claimant's condition is found to meet listing 12.04A1bcdghiB23.
>
> The first evidence which establishes the severity of the claimant's mental health condition is the psychiatric hospitalization in May 2010. Prior to 5/5/2010, there is insufficient evidence available to fully evaluate the severity of her mental health conditions.
>
> Claimant's date last insured is 3/31/2010. At that time, there was insufficient evidence to fully evaluate the severity of her condition.

(TR 80-81). Similar findings were noted in a subsequent state agency report. (TR 103).

As set forth above, based on plaintiff's medical history, the state agency psychologist felt that it was necessary to purchase a consultative evaluation. Dr. Therese M. May, a psychologist, conducted the consultative psychological study, with report dated March 16, 2011. Dr. May diagnosed recurrent major depression, with significant impairment in mood, judgment, concentration, and logical, goal-directed thinking. Dr. May listed diagnostic impressions as follows:

> Ms. Brinegar presents with symptoms of severe depression and suicidality requiring several hospitalizations within the last year. She presents with chronic suicidal ideation, hopelessness, depressed mood, sleep disturbance, attention and concentration problems and poor appetite. She also is anhedonic and hopeless. She presents with a history of abuse, avoidant behavior and nightmares suggestive of a PTSD diagnosis. She has been diagnosis [sic] with bipolar in the past, but the examiner could not gather any current evidence of manic episodes.

(TR 402). In terms of the progression of plaintiff's psychiatric disability, Dr. May commented as follows:

> Ms. Brinegar presents as a severely depressed and physically deteriorated woman who has experienced significant cognitive, emotional and physical decline over the last few years, going from skilled employment to remaining in bed for most of the day.

> She appears to require assistance with most activities of daily living. She requests supervision of funds given her cognitive difficulties.

(TR 402).

In short, the court is unable to conclude that the Law Judge's assessment of the medical record is supported by substantial evidence. In light of Dr. May's consultative report, which was commissioned on the recommendation of the nonexamining state agency psychologists, the court believes that the Law Judge's reliance on the state agency reports is misplaced. Most importantly, the court finds no basis in the record for the Law Judge's determination that the later psychiatric reports are not descriptive of plaintiff's level of function during the period of time in which she still enjoyed insured status.

It is well settled that evidence developed after termination of insured status may be relevant to prove disability arising before the date last insured. Bird v. Commissioner, 699 F.3d 337 (4th Cir. 2012); Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005); Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); and Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969). In the instant case, it is clear beyond any reasonable question that plaintiff's psychiatric disability existed at a time prior to the termination of insured status. The state agency psychologist, as well as Dr. May, focused on the aforementioned psychiatric hospitalization on May 5, 2010. At the time of discharge, less than two months after the termination of plaintiff's insured status, Mrs. Green's treating psychiatrist, Dr. Nazir Chaudhary, offered the following comments as to the duration of plaintiff's mental and emotional problems:

> Patient has a long history of bipolar disorder. Patient has been on psychotropic medication for years. Patient also has multiple medical problems. Patient in the past has been to MCV and also Rappahannock General Hospital in September 2009 on the psychiatric floor.

(TR 319). Dr. Chaudhary made similar findings in a mental residual functional capacity questionnaire completed on October 20, 2010. In the hospital report, Dr. Chaudhary made reference to an earlier period of hospitalization in September of 2009, well before termination of insured status and prior to the final decision of the Commissioner on plaintiff's first set of applications.[3] On that occasion, Mrs. Green was hospitalized after a suicide attempt. She was diagnosed as suffering from bipolar disorder with psychotic features and post-traumatic stress disorder. (TR 306-07). In the hospital report, Dr. Chaudhary summarized plaintiff's history as follows:

---

[3] While Mrs. Green's hospitalization in September of 2009 occurred before the issuance of the Administrative Law Judge's decision on her first set of claims, the hospital report was not made available to the first Law Judge, the Appeals Council, or the U. S. District Court for the Eastern District of Virginia. However, this hospital report is part of the record compiled in connection with plaintiff's second set of applications. In denying the second application for disability insurance benefits, the Law Judge cited the September 2009 hospital report only by exhibit number in support of the observation that "claimant has a history of an affective disorder, an anxiety disorder, and mild degenerative disc disease." (TR 26). The Law Judge did not evaluate the report in the context of her decision that the medical findings made during plaintiff's hospitalization in May of 2010 could not be related back to a time prior to March 31, 2010, the date last insured. Indeed, the Law Judge refuted plaintiff's testimony that she had a suicide attempt within the relevant time frame, noting that there is "no evidence of a suicide attempt within the relevant time period." (TR 28). Thus, it seems that the Law Judge ultimately rejected all evidence compiled prior to the unadjudicated period as not relevant, and discounted all evidence compiled after the unadjudicated period as not probative of plaintiff's condition prior to day last insured. The court finds no basis for such treatment of plaintiff's evidence.

Perhaps the most outrageous statement made in connection with the September 2009 hospital report appears in the Commissioner's memorandum in opposition to plaintiff's motion for summary judgment. In apparent recognition of the significance of the September 2009 psychiatric hospital report in undercutting the Law Judge's finding that Mrs. Green did not become disabled due to psychiatric impairment until about two months after the date last insured, the Commissioner maintains that the report is "now barred by res judicata, and the Court may not consider it in its substantial evidence review of the case." (Def.'s Reply Br. 1). Apparently, the Commissioner believes that because Mrs. Green did not submit the September 2009 report as part of the evidence to be considered in the adjudication of her first set of claims, the report cannot be considered in connection with the adjudication of her second set of applications. In support of this remarkable assertion, the Commissioner cites the decision of the United States Court of Appeals for the Fourth Circuit in Albright v. Comm'r of Soc. Sec., 174 F.3d 473 (4th Cir. 1999), and Acquiescence Ruling 00-1(4) issued as a result of Albright. Yet, Albright and AR 00-1(4) deal with the totally unrelated requirement that, when adjudicating a second application for benefits, an Administrative Law Judge must consider the findings made by another Law Judge in the adjudication of an earlier claim. The court is unaware of any authority for the proposition that, based on principles of res judicata or otherwise, the court is foreclosed from considering the significance of the September 2009 hospital report in the instant case. Simply stated, plaintiff's new applications require the adjudication of her entitlement during a later period of time. Res judicata bars attempts to relitigate the same claim. Albright, supra at 476. It is abundantly clear that, in the instant case, plaintiff is litigating a second claim, and that the doctrine of administrative res judicata has no preclusive effect as to the evidence to be considered in that adjudication.

9

> Patient has a history of bipolar disorder and post-traumatic stress disorder. Patient has been on psychotropic medication. Patient also has a history of arthritis, fibromyalgia and restless leg syndrome. Patient in the past has been admitted to Medical College of Virginia. She was in ICU after an overdose, probably an accidental overdose, and then later on she was transferred to the psychiatric floor. She was there for about 10 days and was discharged on 05/19/2009. Patient has a history of suicidal attempts in the past. Patient says that she attempted suicide 7 different times but did not go to any hospital. The patient also has been to Warsaw Counseling Center on a few occasions.

(TR 306).

In summary, the court concludes that the Commissioner's final decision is not supported by substantial evidence. Given the fact that the state agency psychologists deferred to the consultative psychologist in assessing Mrs. Green's condition, and inasmuch as the consultative psychologist clearly found that plaintiff's psychiatric problems are disabling, the court believes that the Law Judge's reliance on the state agency psychological reports is simply not consistent with the record in this case. Moreover, given the history of psychiatric hospitalizations as outlined in Dr. Chaudhary's reports in 2009 and 2010, and as further emphasized by the consultative psychologist, the court concludes that Mrs. Green has met the burden of proof in establishing that she experienced essentially the same level of psychiatric dysfunction throughout the unadjudicated period, for purposes of her application for disability insurance benefits. The court concludes that Mrs. Green has met the burden in establishing entitlement to a period of disability and disability insurance benefits, with an onset date of November 5, 2009.[4]

---

[4] The vocational expert testified to the effect that the work-related limitations identified by Dr. Chaudhary, and attributed to Mrs. Green by Dr. Chaudhary beginning in 2009, would prevent performance of all work activity. (TR 55).

10

For the reasons stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must be denied. Upon the finding that the plaintiff has met the burden of proof as prescribed by and pursuant to the Act, judgment will be entered for plaintiff. The final decision of the Commissioner will be reversed and the case recommitted to the Commissioner for computation and award of appropriate benefits. A judgment and order in conformity will be entered this day.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

DATED: This 14th day of October, 2014.

*/s/ Glen Conrad*
Chief United States District Judge